STATE v. WILLIAM STITT.

(Filed 6 May, 1908).

1. Murder—Intent—Imputed.

Before a conviction for murder can be had, an unlawful and intentional taking of another's life must be shown, or imputed, as is sometimes the case, by reason of the killing with a deadly weapon, or under circumstances which indicate a reckless indifference to human life.

2. Manslaughter—Pointing Gun—Statutory Misdemeanor.

Revisal, sec. 3622, makes it a misdemeanor for one to point a gun or pistol at another, whether they be loaded or unloaded; and when one causes the death of another by an unlawful act which amounts to an assault on the person, as pointing a gun under circumstances which would not excuse its discharge, he is guilty at least of manslaughter.

3. Same—Instructions—Evidence—Sufficient.

Under evidence tending to show that defendant and deceased were upon intimate terms, and the former, in playfulness, stepped back for a gun, which he thought unloaded, cocked it and pointed it at the deceased, believing he was the last to have had the gun and that he had left it unloaded; that it had been

three or four weeks since he had had it; that his sister, also a witness, in corroboration, told him to put the gun down, it might be loaded, to which he replied it was not, that he would not point a loaded gun at the deceased; that the gun fired, resulting in the death, whereat the defendant expressed regret and surprise: *Held*, it was not error in the court below to instruct the jury, if they found from the evidence, beyond a reasonable doubt, that the defendant intentionally cocked and aimed the gun at deceased, when it discharged its load and killed him, to return a verdict of manslaughter.

(*State v. Horton*, 139 N. C., 558, cited and distinguished).

THIS was an indictment of defendant for the murder of Jim Pearce, tried before *Ward, J.,* and a jury, at April Term, 1907, of the Superior Court of MECKLENBURG County.

The State offered evidence tending to prove that defendant and deceased were "playing" and "projecking" together, when defendant took down a gun and pointed it at deceased, when the gun was fired, killing deceased; that when the defendant took down the gun his sister told him to quit playing with the gun, and defendant replied that there was no shell in it, because he was the one that had the gun last, and there was no shell put in it, and said, further: "You know I would not point a loaded gun at my friend." When the gun fired and deceased fell, defendant said: "Goodness! I didn't know there was a shell in the gun," and said, further, if he had known there was a shell in the gun, or any danger of its killing him, he would not have pointed it at him.

Defendant, as a witness in his own behalf, testified as follows: "I knew the deceased, Jim Pearce, for about eight or nine years. About 16 February last, he came over to my house to get his hair cut. I told him to come in. He said to me: 'Are you going to cut my hair?' He said he had ten cents, but wanted it for something. He said: 'Say, Coz, are you going to cut my hair?' Then we began to play. He had hold of my hand and called me a good boy. I stepped back and got the gun and cocked it and pointed it toward him. My sister told me to put it down; it might be loaded. I told her

it was not; I would not point a loaded gun at him. He (Pearce) stepped off, and I picked up the gun and shot him. I got it behind the door. I was projecking with it. I knew I was the last one who had it, and I had put it up empty. It had been three or four weeks since I had it last time. He threw his hands across his breast and fell. I said: 'I have shot Jim.' I said I would not have done it for anything. I told Mr. Caldwell about how it happened."

Defendant, in apt time, preferred a request that in no aspect of the case could the defendant be convicted of murder, and several other requests suggesting views of the evidence by which the jury might acquit defendant of any offense on the facts disclosed.

The court charged the jury as follows: That they should not convict the defendant of murder in the first degree or murder in the second degree, and charged the jury that the burden was on the State to satisfy them from the evidence, beyond a reasonable doubt, that the defendant was guilty of manslaughter. The court then defined to the jury what constituted manslaughter. To this there was no exception.

The court then charged the jury, among other things, that, if they found from the evidence, beyond a reasonable doubt, that the defendant picked up the gun and intentionally pointed it at the deceased, and cocked it, aiming it at him; and if they further found, beyond a reasonable doubt, that the gun discharged its load and killed deceased, and this was done willfully and intentionally, the defendant would be guilty of manslaughter, and it would be the duty of the jury to return a verdict of guilty of manslaughter.

The jury found defendant guilty of manslaughter, and from judgment on the verdict defendant appealed.

*Assistant Attorney-General* for the State.

No counsel *contra.*

HOKE, J. There is no error in the record which gives the defendant any just ground of complaint. The court correctly held that, on the testimony, defendant could not be convicted of murder. A conviction of murder should never be allowed unless there has been an unlawful and intentional taking of another's life. Sometimes this intent will be imputed by reason of the killing with a deadly weapon, or under circumstances which indicate a reckless indifference to human life, but it must always exist before a charge of murder can be sustained. And in the present case we think the testimony on the part of the State was of a kind to justify the position that no intentional killing of the deceased had been shown. In no aspect of the evidence, however, if believed, could the defendant be held entirely innocent, and his prayers for instructions based upon any such view of the facts were, therefore, properly rejected.

It is well established that if one causes the death of another by reason of culpable negligence, or by an unlawful act which amounts to an assault on the person, he is guilty at least of the crime of manslaughter. *State v. Turnage,* 138 N. C., 566; *State v. Vines,* 93 N. C., 493; *People v. Stubenvoll,* 62 Mich., 329; Wharton on Homicide (3d Ed.), p. 696. In *State v. Turnage, supra,* it is held that, if death ensues from the unjustifiable and reckless use of a gun, it is manslaughter, whether the gun was intentionally discharged by the prisoner or not. And, delivering the opinion, *Associate Justice Brown,* for the Court, said: "We do not controvert any of the legal propositions contended for by the State as to what acts will constitute manslaughter, when death ensues from the reckless use of a deadly weapon, such as a pistol or gun. Pointing a gun at another, under such circumstances as would not excuse its intentional discharge, constitutes, in this and many other States, a statutory misdemeanor, and an accidental killing occasioned by it is manslaughter." True, a new trial was ordered in *Turnage's case,* but that was chiefly because the

defendant had expressly testified that he did not intentionally point the gun at any one.

In *State v. Vines, supra,* it is held: "Where one is engaged in an unlawful and dangerous sport and kills another by accident, it is manslaughter." The pointing of a gun or pistol at another has come to be so generally recognized as an act importing negligence that "Didn't know it was loaded" has passed into a saying descriptive of the serious or fatal results that frequently attend such conduct, and with us the matter has been considered of such importance that our statute law (Revisal, sec. 3622) has made it a misdemeanor, punishable by fine or imprisonment, or both, in the discretion of the court, for anyone to point a gun or pistol at another, "in fun or otherwise, and whether the gun or pistol shall be loaded or unloaded."

According to defendant's statement, he intentionally pointed the gun at the deceased, and, while it is not a matter of controlling importance, he evidently snapped it, for his exclamation was: "Goodness! I did not know there was a shell in the gun." And this, too, when his testimony further shows that he had not handled or examined the gun in three or four weeks. His own version of the occurrence, therefore, brings his conduct within the condemnation of either principle announced and sustained by the authorities cited. He was culpably negligent, and was engaged at the time in an act which by our statute is made an unlawful assault on the deceased. There is nothing here said which militates in any way against the doctrine upheld by this Court in the case of *State v. Horton,* 139 N. C., 588. In that case the facts were presented to the Court in the form of a special verdict, by which, with other statements, it was made to appear "that said killing was wholly unintentional; that the shooting of the deceased was done while the defendant was under the impression and belief that he was shooting at a wild turkey; that the hunting engaged in was not in itself dangerous to human life, nor was

he reckless in the manner of hunting and handling the firearm with which the killing was done." A perusal of the opinion will disclose that these facts just mentioned were referred to throughout as controlling in the case, and were made the basis of the judgment on which the defendant's innocence was declared. In the opening sentence of the opinion the Judge said: "It will be noted that the finding of the jury declares that the act of the defendant was not in itself dangerous to human life, and excludes every element of criminal negligence." And on page 592: "The special verdict having found that the act in which the defendant was engaged was not in itself dangerous to human life, and negatived all idea of negligence, we hold that the case is one of excusable homicide."

The two cases are thus clearly distinguished, and in the case at bar the Judge could well have charged that, if the jury was satisfied beyond a reasonable doubt that defendant intentionally pointed the gun at the deceased, and while so engaged the gun was discharged, killing the deceased, the defendant would be guilty of manslaughter.

There is no error to defendant's prejudice, and the judgment below is affirmed.

No Error.