STATE v. VIC. LIMERICK.

(Filed 13 May, 1908).

**Manslaughter—Accidental Shooting—Evidence—Instructions—Error.**

The evidence tended to show that the prisoner and deceased, two young boys, were friends. A witness testified that at the time in question they came up to him, and that deceased had a gun; that they walked away from him and one said, "I will shoot you"—the other said, "No you won't, I will shoot you"; that he turned and saw the gun fire; that they were close together and only a few steps from him; that the boys were laughing when they spoke of shooting, and that witness did not know who then had the gun, but the prisoner had it when he looked around. There was also evidence tending to establish the firing of the gun as the cause of deceased's death, and evidence that before his death deceased said that he and prisoner "were fooling with the gun and it went off accidentally." There was no evidence that prisoner intentionally pointed the gun at deceased: *Held,* it was error in the trial Judge to charge the jury that, if they believed the evidence, or considered it in its most favorable light to prisoner, he was guilty of manslaughter.

(*State v. Stitt,* at this term; *State v. Turnage,* 138 N. C., 566, cited and distinguished).

INDICTMENT against defendant for the murder of one D. Williams, tried before *Peebles, J.,* and a jury, at October Term, 1907, of the Superior Court of RUTHERFORD County.

Before the jury were selected, the Solicitor for the State announced that he would not ask for a conviction of murder in the first degree, but would insist on a conviction of murder in the second degree or manslaughter. After hearing the testimony, the court, among other things, charged the jury that, if they believed the evidence, they should find the defendant guilty of manslaughter at least; that, taking all the evidence in its most favorable light to the defendant, he would be guilty of manslaughter. The jury returned a verdict of guilty of manslaughter, and from judgment on the verdict the defendant appealed.

*Assistant Attorney-General* for the State.

*McBrayer, McBrayer & McRorie* for defendant.

HOKE, J.    There was error in the charge of the court, above stated, and the question of the prisoner's guilt or innocence of the crime of manslaughter should have been submitted to the jury, with appropriate instructions.

There was evidence tending to show that the prisoner and the deceased, two young boys, were friends, had the warmest friendship for each other, as stated by one of the witnesses, and that they were both in good humor at the time.    Speaking directly to the occurrence, Aden Lynch, a witness for the State, testified as follows: "I am sixteen years old.    Defendant is younger than I am.    I knew deceased.    He died on the 9th of last December, in this county.    He was shot in the leg. Deceased and prisoner were scuffling over a gun.    I saw them coming through the old field.    Deceased had a gun, and one of them hallooed, and I stopped.    They came up to me, and we talked a few minutes.    I had my gun.    Deceased handed me his gun and I gave him mine.    I looked at his gun and set it down, and said: 'There is your gun; I must go.'    They then started through a straw field.    One of them said: 'I will shoot you.'    I don't know which it was.    The other said: 'No, you won't; I will shoot you.'    They were laughing.    I turned around and saw the gun fire, and deceased fell.    Prisoner had gun when deceased fell.    They were standing close together, eighteen steps from me.    After I heard what was said about shooting, it was about a minute.    They were walking, and took only a few steps.    Don't know which one had the gun when they walked away from me.    Don't know which had the gun when they were talking about shooting each other. Deceased was shot just above the left knee, and lived until the next day some time."    On cross-examination, this witness said: "The deceased and prisoner seemed to be great friends. I was out hunting and came up with them.    They seemed to be laughing.    Neither one said how it happened when I got

STATE *v.* LIMERICK.

to them. Dr. Thompson asked deceased if they got out of something to shoot, and deceased said 'Yes.' "

A doctor testified that deceased died from the effect of the gunshot wound. Several witnesses, without objection, testified that deceased, in speaking of the shooting, said it was an accident. Lee Nanney, witness for the State, testified that he saw prisoner and deceased at the place of the shooting, and deceased said: "I and Vic. were fooling with the gun and it went off accidentally." He gave the same account to his father on the way home, saying: "I and Vic. were fooling with the gun and it went off accidentally." Another witness said: "I asked deceased how it happened. 'Were you in a racket?' " and that deceased said: " 'No; it was an accident.' This was on the way home. After we got home he told me there was no hardness between deceased and the defendant; they were scuffling with the gun and it went off." To other witnesses the deceased said the shooting was accidental.

Undoubtedly, if the prisoner intentionally pointed the gun at the deceased and it was then discharged, inflicting the wound of which he died, or if the prisoner was at the time guilty of culpable negligence in the way he handled and dealt with the gun, and by reason of such negligence the gun was discharged, causing the death of deceased, in either event the prisoner would be guilty of manslaughter, and this whether the discharge of the gun was intentional or accidental. We have so held at the present term, in *State v. Stitt,* and other authorities are to like effect. *State v. Turnage,* 138 N. C., 566; *Commonwealth v. Matthews,* 89 Ky., 293. But neither of these positions necessarily or as a matter of law arises from the testimony, and the question of the prisoner's guilt or innocence must be left for the jury to determine on the facts as they shall find them. *State v. Turnage, supra.*

In the case of *State v. Vines,* 93 N. C., 494, being one of the authorities relied on by the State, there was evidence tending to uphold the position that the killing was intentional,

and, if not, the conduct of the prisoner at the time was both unlawful and so clearly reckless and culpable that the guilt of the prisoner was not open to question, and *Merrimon, J.,* delivering the opinion of the Court, said: "The court instructed the jury that, if they should believe the evidence, the prisoner was guilty of manslaughter. They rendered a verdict of guilty of that offense, and it must be taken that they believed the evidence; and, if they did, it is manifest that the prisoner was at least guilty of manslaughter. If it be granted that he and Hines were in jest and rough sport—which is by no means certain—he was using a dangerous weapon—a loaded pistol, knowing that it was loaded—not only incautiously, but in a most reckless and unlawful manner. He had it pointed at Hines, who fell behind the deceased, saying, as he did so, 'Shoot and be damned,' when at once he fired the fatal shot. If he did not intend to kill Hines, and the discharge of the pistol was unintentional, still the killing was manslaughter, because, in any view of his conduct, he used the dangerous weapon carelessly and unlawfully. It is clear that where one engaged in an unlawful or dangerous sport kills another by accident it is manslaughter."

That decision does not apply to the facts presented here, which require, as stated, that the cause shall be referred to the decision of a jury, and to that end a new trial is awarded.