Indictment for murder. The testimony on the part of the State tended to show that on 18 January, 1913, Nash Lane was killed by a discharge of a pistol in the hands of the prisoner and under circumstances as follows:
Bob Tarpley, for the State, testified: "That he was 5 to 10 feet behind a group of persons, seven in number, in which were included the deceased and the defendant. That he heard the crowd talking and laughing. He heard a pistol shot, and heard a person named Trollinger (not defendant) say, `You shot that boy!' and heard defendant say, `I never shot the boy.' That he caught up with the crowd and found Nash Lane shot. Did not see pistol. Heard no fuss of any kind and heard only talking and laughing."
William Crawford, another witness for State, testified: "That he was walking in front of the group referred to. That he never saw *Page 512 
pistol, but heard it fire, and heard some one exclaim, `You shot that boy.' That there had been no fuss of any kind. The crowd was laughing and talking."
John Ed. McBroom, for the State, testified: "That he was in the group, walking next to defendant. That he and defendant were going home and the others in group were going to a store. That they were in public road and that defendant had a pistol `fooling with it, and it went off.' That the defendant `had it out, messing with it, (620) pulling the cartridges out.' That the defendant had had the pistol in his hands three or four minutes before it fired. That deceased was on the left side of the road. That there was not a fuss at all. Not a cross word."
Defendant introduced no testimony.
The court in effect charged the jury that if they were satisfied beyond reasonable doubt that the prisoner killed deceased with a deadly weapon the burden was on defendant to show it was excusable homicide, and there was no evidence in case sufficient to go to the jury to show that defendant was not guilty of the crime of manslaughter, and it would be their duty to convict of that crime.
Verdict, guilty of manslaughter. Judgment, and prisoner excepted and appealed.
On the facts as they now appear of record, this case, in our opinion, is controlled by that of S. v. Limerick, reported in 146 N.C. 649. InLimerick's case the only eye witness of the homicide testified in effect that deceased and defendant prisoner, two young boys, good friends, were coming through a field, and deceased had a gun. That witness heard one say to the other, "I will shoot you;" the other replied, "No, I will shoot you"; they were laughing. Witness turned around, and, as he did so, the gun fired and deceased fell. That prisoner held the gun when it fired. They were standing close together, and about 18 steps from witness. Don't know which one had the gun when they walked off from witness. Don't know which one had it when they were talking about shooting each other. On cross-examination, the witness further said: "The deceased and prisoner seemed to be great friends. That witness was hunting and came up with them; they seemed to be laughing," etc. This was the only witness who testified directly to the facts of the occurrence, and the court below *Page 513 
ruled, as in this case, that in any aspect of the evidence the prisoner was at least guilty of the crime of manslaughter. Speaking (621) to this position, the Supreme Court, in granting a new trial, said: "Undoubtedly, if the prisoner intentionally pointed the gun at the deceased and it was then discharged, inflicting the wound of which he died, or if the prisoner was at the time guilty of culpable negligence in the way he handled and dealt with the gun, and by reason of such negligence the gun was discharged, causing the death of deceased, in either event the prisoner would be guilty of manslaughter, and this whether the discharge of the gun was intentional or accidental. We have so held at the present term, in S. v. Stitt, and other authorities are to like effect. S. v. Turnage, 138 N.C. 566;Commonwealth v. Matthews, 89 Ky. 393. But neither of these positions necessarily or as a matter of law arises from the testimony, and the question of the prisoner's guilt or innocence must be left for the jury to determine on the facts as they shall find them. S. v. Turnage,supra."
In the present case there is no evidence that the parties were angry with each other. It is not admitted nor has it thus far been established that the prisoner intentionally pointed the pistol towards the deceased, and the testimony as now given in seems to present the prisoner's case on the question whether he was guilty of culpable negligence in the way he was handling the weapon at the time of its discharge. Negligence of a kind not unlikely to cause injury to the deceased or any of the by-standers; and a proper application of the principles announced in Limerick's case requires that the issue be submitted to the jury as to defendant's guilt or innocence of the crime of manslaughter. See S. v. Turnage, 138 N.C. 566.
We are referred by counsel to S. v. Stitt, 146 N.C. 643, as an authority sustaining the charge; but in that case the facts showed that the prisoner intentionally pointed the gun at the deceased, with some evidence that he snapped it, an act not only of the highest negligence, but in breach of the statute laws making prisoner's act an unlawful assault on the person.
It was further urged that the prisoner at the time was engaged in an unlawful act, to wit, carrying concealed weapons when not on his own premises. This is not conclusively established by the evidence, and if it were, the defendant's guilt would not follow as a matter (622) of law. The unlawful act being only malum prohibitum, and the act itself, unless accompanied with negligence or further wrong, having no necessary tendency to bring about the result.
In S. v. Horton, 139 N.C. 591, the following citation was made with approval from Foster's Crim. Law: "A. shooteth at the poultry of B. and by accident killeth a man; if his intention was to steal the poultry, *Page 514 
which must be collected from circumstances, it will be murder by reason of that felonious intent; but if it was done wantonly and without that intention, it will be barely manslaughter. The rule I have laid down supposeth that the act from which death ensued was malum in se. For if it was barely malum prohibitum, as shooting at game by a person not qualified by statute law to keep or use a gun for that purpose, the case of a person so offending will fall under the same rule as that of a qualified man. For the statutes prohibiting the destruction of the game under certain penalties will not, in a question of this kind, enhance the accident beyond its intrinsic moment." And this principle is fully sustained in Potter v.State, 162 Indiana, 213, and other cases of like purport.
There is error, and the prisoner is entitled to have his cause tried before another jury.
New trial.
(623)