STATE OF NORTH CAROLINA v. MORRIS CURRIE

No. 7015SC137

(Filed 1 April 1970)

1. **Homicide § 30— second degree murder — instructions on lesser degree of crime — contradictory instructions**

   In a prosecution for murder in the second degree, the trial court properly denied defendant's requested instruction that if the jury found that defendant intentionally fired the shot which killed deceased and also found that defendant believed the gun was not loaded, then defendant would be guilty only of involuntary manslaughter.

2. **Homicide § 24— instructions — presumption of malice — defendant's testimony that he did not know rifle was loaded**

   In a prosecution for murder in the second degree committed with a rifle, wherein defendant testified that he was only playing with the deceased and did not know the rifle was loaded, the trial court should have clearly instructed the jury that the presumption of malice would not arise if they believed defendant's testimony; consequently, portion of the court's instructions which would have permitted the jury to consider the presumption of malice had they believed defendant's testimony to be true, *held* reversible error.

3. **Homicide § 5— second degree murder — malice**

   Malice is an essential element of murder in the second degree.

4. **Homicide § 14— presumption of malice — requisite intent**

   Malice, as one of the essential elements of murder in the second degree, is not presumed merely by the pointing of a gun or pistol at another person in fun in violation of G.S. 14-34; in order for this presumption of malice to arise from an assault with a deadly weapon, there must be an intent to inflict a wound with such weapon which produces death.

5. **Homicide § 14— presumption of malice — unintentional firing of deadly weapon**

   An unintentional firing of a deadly weapon, believed to be unloaded, is not such an intentional use thereof as gives rise to the presumption of malice.

APPEAL by defendant from *Brewer, J.,* October 1969 Criminal Session of Superior Court held in ALAMANCE County.

Defendant was tried upon a bill of indictment charging him with murder in the first degree in connection with the death of Banks Wyatt. The record reveals that he was tried upon the charge of murder in the second degree. From a judgment of imprisonment upon a verdict of guilty of murder in the second degree, the defendant appealed to the Court of Appeals.

*Attorney General Morgan, Assistant Attorney General Rich, and Staff Attorney Costen for the State.*

*W. R. Dalton, Jr., for the defendant appellant.*

MALLARD, C.J.

The evidence for the State tended to show that Morris Currie (defendant), the deceased, Banks Wyatt (Banks), and Sherman Williams (Sherman) all worked at the same place. On 27 June 1969, after they were paid by their employer, the three of them engaged in gambling with dice. At approximately 7:30 or 8:00 p.m. after the defendant had lost some of his money, he asked Sherman to take him home. The three of them rode in Sherman's car to the defendant's home. After telling them he was going into the house to get some more money and would come back, the defendant got out of the car. Sherman turned the car around, and he and Banks waited. When the defendant came out of the house, he had a 30-30 carbine which he pointed toward the window of the car and told Sherman and Banks that he wanted his money back. (This weapon is referred to by the witnesses as a "gun," "rifle," and "carbine.") Sherman was sitting in the driver's seat of the car and Banks was sitting next to him. Banks was closer to where defendant was standing than Sherman. Sherman started to put his hand in his pocket to get the money, and defendant told him to keep his hands up. Banks told the defendant, who was about twenty feet away at that time, to come on over and talk and that he would give him his money back. The defendant kept the carbine pointed at them and told them to keep their hands up. Sherman started to open the car door, and at that time the defendant shot. The bullet struck Banks just above his right ear, killing him instantly.

Defendant's evidence is summarized, except where quoted, as follows: Sherman and Banks won all of his money in the dice game. At his request, Sherman, together with Banks, took defendant home. He went into the house after telling them he was going there to get some more money. He brought the carbine out of his house intending to sell it to one of them. He went out and "played with the boys, when I walked in the yard I said, 'This is a hold up,' and I didn't know there was anything in the gun * * *. I did point the gun * * * I didn't think there was anything in the gun. I asked them to give me my money back, but I didn't mean it. I said it in a joking way." The carbine went off. Sherman got out and put some money on the hood of the car. When defendant went to the car to see if Banks was shot, Sherman snatched the carbine from him and

struck defendant with it. Defendant then ran away but came back immediately and asked for somebody to call an ambulance and the sheriff.

**[1]** The defendant, in apt time and in writing, requested that the judge give certain instructions to the jury. This request was denied. The requested instructions read in pertinent part:

> "The Court instructs you that even if you find that the defendant Morris Currie intentionally fired the shot which killed Banks Wyatt, if you also find that the said Morris Currie believed at the time that the gun was not loaded, the defendant will be guilty only of involuntary manslaughter * * *."

While the defendant could have intentionally pointed the gun and intentionally pulled the trigger, believing that the gun was not loaded, he could not have intentionally fired the shot and at the same time believed that the gun was not loaded. The judge, therefore, did not commit error in failing to instruct the jury in the manner requested by the defendant because the instructions as requested are contradictory.

**[2]** The defendant contends that the court committed error in failing to instruct the jury as to the legal effect of the defendant's testimony that he was playing and did not know that the gun was loaded.

**[2, 3]** We think defendant's exception to the following portion of the charge is well taken:

> "Now, the intentional killing, to raise the presumption of malice and unlawfulness, does not mean a specific intent to kill someone, but it means an intentional assault with a deadly weapon inflicting wounds thereby causing death of the deceased."

When considered with the charge as a whole and the factual situation presented by the evidence, the meaning of this instruction in this case is not clear. The jury could have inferred from this that the gun, thought to be unloaded, and intentionally pointed at the deceased in fun, which discharged when defendant pulled the trigger thinking that it was unloaded and which resulted in the death of the deceased, raised the presumption of malice. Malice is an essential element of murder in the second degree.

Murder in the second degree and malice are defined in *State v. Benson*, 183 N.C. 795, 111 S.E. 869 (1922), as follows:

> "Murder in the second degree is the unlawful killing of a human

being with malice, but without premeditation and deliberation. S. v. Lipscomb, 134 N.C. 695; S. v. Fuller, 114 N.C. 885.

Malice is not only hatred, ill-will, or spite, as it is ordinarily understood — to be sure that is malice — but it also means that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification. S. v. Banks, 143 N.C. 652. It may be shown by evidence of hatred, ill-will, or dislike, and it is implied in law from the killing with a deadly weapon; and a pistol or a gun is a deadly weapon. S. v. Lane, 166 N.C. 333.

*          *          *

When it is admitted or proven that the defendant killed the deceased with a deadly weapon, the law raises two presumptions against him; first, that the killing was unlawful; and second, that it was done with malice; and an unlawful killing with malice is murder in the second degree."

G.S. 14-34 provides that an assault is committed when any person points a gun or pistol at another, either in fun or otherwise. The pertinent part of this statute reads: "If any person shall point any gun or pistol at any person, either in fun or otherwise, whether such gun or pistol be loaded or not loaded, he shall be guilty of an assault * * *." It is, therefore, axiomatic that if the gun or pistol used is in fact a deadly weapon, then such pointing thereof is an assault with a deadly weapon.

[4, 5]    Malice, as one of the essential elements of murder in the second degree, is not presumed merely by the pointing of a gun or pistol at another person in fun in violation of G.S. 14-34. In order for this presumption of malice to arise from an assault with a deadly weapon, there must be an intent to inflict a wound with such weapon which produces death. State v. Williams, 235 N.C. 752, 71 S.E. 2d 138 (1952). See also State v. Phillips, 264 N.C. 508, 142 S.E. 2d 337 (1965). An unintentional firing of such deadly weapon, believed to be unloaded, is not such an intentional use thereof as gives rise to the presumption of malice. In the case of State v. Gordon, 241 N.C. 356, 85 S.E. 2d 322 (1955), Justice Bobbitt (now Chief Justice), speaking for the Court, said:

"When the killing with a deadly weapon is admitted or established, two presumptions arise: (1) that the killing was unlawful; (2) that it was done with malice; and an unlawful killing with malice is murder in the second degree. . . . A specific intent to kill, while a necessary constituent of the elements of

premeditation and deliberation in first degree murder, is not an element of second degree murder or manslaughter. The intentional use of a deadly weapon as a weapon, when death proximately results from such use, gives rise to the presumption. *S. v. Quick*, 150 N.C. 820, 64 S.E. 168. The presumptions do not arise if an instrument, which is *per se* or may be a deadly weapon, is not intentionally used as a weapon, *e.g.*, from an accidental discharge of a shotgun."

The defendant in his brief says that:

"Since the defendant admitted he pulled the trigger and that the gun did not go off accidentally; since he admitted he pointed the gun in the direction of the deceased, and since the gun did kill the deceased without any further misadventure sufficient to deflect the aim, the jury would no doubt find that the defendant did point the gun at the deceased in violation of G.S. 14-34. And even if he merely pointed in the general direction of the two companions, this would probably be culpable negligence without regard to the statute. Consequently, as a practical matter, the defendant confessed guilt to manslaughter in open court. Thus, the case was reduced to one single point — was the defendant guilty of manslaughter or of murder."

In 40 Am. Jur. 2d, Homicide, § 95, it is said:

"With few exceptions, every unintentional killing of a human being arising from a wanton or reckless use of firearms, in the absence of intent to discharge the weapon, or in the belief that it is not loaded, and under circumstances not evidencing a heart devoid of a sense of social duty, is manslaughter. If a person points a pistol at another in sport, as a joke, or to cause fright merely, believing and, perhaps, having some reason to think that it is not loaded, and subsequently pulls the trigger, causing the pistol to be discharged, and resulting in the killing of the person pointed at, he is guilty of manslaughter."

In the case of *State v. Foust*, 258 N.C. 453, 128 S.E. 2d 889 (1963), the evidence tended to show that the defendant and the deceased were playfully "scuffling" with defendant's loaded gun. The Court said:

"It seems that, with few exceptions, it may be said that every unintentional killing of a human being proximately caused by a wanton or reckless use of firearms, in the absence of intent to discharge the weapon, or in the belief that it is not loaded, and

under circumstances not evidencing a heart devoid of a sense of social duty, is involuntary manslaughter."

In the case of *State v. Stitt,* 146 N.C. 643, 61 S.E. 566 (1908), the State's evidence tended to show that while the defendant and the deceased were "playing" and "projecking," the defendant took a gun and pointed it at deceased. The gun fired, killing him. The defendant stated that he did not know there was a shell in the gun. The court instructed the jury that they could not convict the defendant of murder in the first degree or murder in the second degree and charged the jury, among other things:

"(T)hat if they found from the evidence, beyond a reasonable doubt, that the defendant picked up the gun and intentionally pointed it at the deceased, and cocked it, aiming it at him; and if they further found, beyond a reasonable doubt, that the gun discharged its load and killed deceased, and this was done willfully and intentionally, the defendant would be guilty of manslaughter, and it would be the duty of the jury to return a verdict of guilty of manslaughter."

In finding that there was no error in the *Stitt* case, the Supreme Court said that "if the jury was satisfied beyond a reasonable doubt that defendant intentionally pointed the gun at the deceased, and while so engaged the gun was discharged, killing the deceased, the defendant would be guilty of manslaughter."

In the case of *State v. Turnage,* 138 N.C. 566, 49 S.E. 913 (1905), the defendant's testimony tended to show that he did not intentionally point the gun at anyone and that he did not intend to shoot anyone, but that he and some others were playing and that he got the gun in order "to frolic" with one of them. The Court held that "pointing a gun at another under such circumstances as would not excuse its intentional discharge constitutes, in this and many other States, a statutory misdemeanor, and an accidental killing occasioned by it is manslaughter. In this State it is immaterial whether the gun is loaded or not. Laws 1889, ch. 527. At common law, one who leveled a loaded gun at another without intention of discharging it, and the gun goes off accidentally and kills another, is guilty of manslaughter."

In the case of *State v. Limerick,* 146 N.C. 649, 61 S.E. 568 (1908), the evidence tended to show that the defendant and the deceased were friends and were scuffling over the gun when it fired, inflicting the wound from which the deceased died. The Court said:

"Undoubtedly, if the prisoner intentionally pointed the gun at the deceased and it was then discharged, inflicting the wound of

which he died, or if the prisoner was at the time guilty of culpable negligence in the way he handled and dealt with the gun, and by reason of such negligence the gun was discharged, causing the death of deceased, in either event the prisoner would be guilty of manslaughter, and this whether the discharge of the gun was intentional or accidental."

[2]    In this case there was ample evidence from the State's witnesses to show an intentional and unlawful killing with a deadly weapon. Such evidence, if believed, was sufficient to support a verdict of guilty of murder in the second degree. However, the defendant testified that he did not know the gun was loaded; that although he pointed the gun, he did not point it at anyone in particular; and that he was only playing and joking with Sherman and Banks. The *defendant's evidence* fails to show that he killed Banks intentionally or with express or implied malice. Therefore, the judge should have instructed the jury that malice, as an essential element of murder in the second degree, would not be presumed if the defendant, in playing and joking with Sherman and Banks, pointed the gun at the deceased and pulled the trigger, and that at the time he pulled the trigger, he thought the gun was unloaded.

The jury may not believe the defendant's testimony, but he is entitled to have the judge apply the law to his evidence. The able judge who tried this case, in charging the jury and applying the law to the facts, seems to have overlooked the defendant's evidence that he was playing and joking and that he did not know the gun was loaded.

We do not deem it necessary to discuss the defendant's other contentions because, for the reasons stated, the defendant is awarded a new trial.

New trial.

MORRIS and VAUGHN, JJ., concur.