### STATE v. DAVID ROUNTREE.

(Filed 6 April, 1921.)

**1. Evidence—Nonsuit—Trials.**

Upon a motion for judgment as of nonsuit, the evidence must be considered in the light most favorable to the State and the court will not pass upon its weight or the credibility of the witnesses.

**2. Criminal Negligence—Statutes.**

Where one is tried for the reckless driving of an automobile made criminal by our statute (C. S., 2618), and an unintentional killing has been established by him, evidence is sufficient for conviction of manslaughter which tends to show such recklessness or carelessness as is incompatible with a proper regard for human life or limb, or that such injury was likely to occur under the circumstances.

**3. Same—Manslaughter.**

The commission of a dangerous act, in itself a violation of a statute, intended to prevent injury to the person, when death to another ensues renders the actor guilty of manslaughter at least.

**4. Automobiles— Statutes— Criminal Negligence— Evidence—Nonsuit— Questions for Jury.**

Evidence tending to show that the deceased was in a place of safety many feet beyond the well defined line of a public highway, and that without any apparent reason the defendant ran his automobile therefrom a considerable distance, with a clear and unobstructed view, and without turning aside to avoid the impact ran over and killed the deceased, is sufficient to take the case to the jury upon the question of the defendant's culpable negligence, and sustain a verdict of guilty of manslaughter under the provisions of C. S., 2618.

**5. Criminal Negligence—Statutes—Speed Limits.**

Where an act makes reckless driving of automobiles upon the public highways, under certain conditions, a criminal offense, and there is a proviso fixing various speed limits thereon as to different localities and conditions criminal negligence *per se* and indictable, the proviso as to the speed limits does not necessarily preclude conviction of the offense prescribed in the body of the act for recklessness while driving at less speed.

APPEAL by defendant from *Horton, J.,* at November Term, 1920, of CUMBERLAND.

Criminal prosecution, tried upon an indictment charging the defendant with manslaughter.

There was evidence on behalf of the State tending to show that on Sunday, 25 April, 1920, about 6 p. m., James A. King was struck by an automobile and injured to such an extent that he died within three or four hours thereafter. At the time of the injury the deceased was on the north side of Hillsboro Street extended, near a sharp turn or curve in the road, about one mile north of the corporate limits of the city of Fayetteville. It is mentioned in the record as the Hillsboro Street Road; and along this thoroughfare the defendant was driving his Ford car when he struck the deceased. The only eye-witnesses to the occurrence were the defendant, his wife, and two colored women who were riding in the machine when the injury occurred. None of these parties, however, gave any evidence in the case.

H. G. Bullock testified that he saw the deceased a few minutes after the injury; that Mr. King was lying on the north side of the street, just beyond the curbing in the road; that he was flat of his back and appeared to be unconscious, and that his left leg was broken; that David Rountree, his wife, and some colored women were there when he arrived; that the defendant was holding Mr. King's head up and asked one of the colored women for something to put under his head, and she went into a house and got a pillow; that the defendant said he was driving the car that hit the deceased. Continuing, the witness stated: The car was six, eight, or ten feet ahead of where the injured man was lying. The two left-hand wheels were in the road and the two right-hand wheels were just across the waterway or berm ditch outside of the road. The used part of the road was a little to the south side near the inside bend. Mr. King's body was on the opposite side. The road at that point is straight but soon turns at almost a right angle and was built for a width of thirty-one feet. It was a new clay road and had not been used a great while. Where the car was, it was moderately hard. I did not notice the track of the car particularly. It was headed westward. The view was unobstructed. I asked some one to phone for a doctor, but as Mr. Patterson drove up, I sent Mr. King to the hospital in his automobile. I do not remember that the defendant said anything about how the deceased was traveling when the car struck him. The defendant was crying before we left.

Lacy Patterson testified: When we got there Mr. King was lying back of a Ford car about four or five feet, with his head on a pillow. His feet were down in a gutter or waterway, and his head was pointed southward. I observed the track of the car. It left the center of the

road that would be traveled by a car or buggy 35 or 40 yards off and came straight until it stopped. It showed there were several kinds of tires on the car, and I could trace it by that. When I saw the car the left-hand side was 12 or 15 feet from the beaten track or ruts of the road ordinarily taken by a car. Mr. King's body was right over in the gutter and his feet were down in it. Where his feet were I would say is about 15 or 18 feet from the beaten track. The width of the road at that point was about 20 feet. Over there on the right side of the road where the wheels were standing there was an onion patch; it was cultivated. After carrying Uncle Jim to the hospital I came back and put down some pegs, from which the measurements were taken when they made a map of it. The deceased made no statement as to how the occurrence happened. About two inches of the bone could be seen protruding through his pants where his leg was broken.

Leslie Smith testified that he was a civil engineer and that he made a survey and map of the place where the deceased was injured, and measured the distances on the road as pointed out by Lacy Patterson. The defendant's car left the center of the road at a point 274 feet west of the Linden Road. From this point to where Mr. King's body was found it is 78 feet, and 93 5-10 feet to where the car stopped, which was 15½ feet from the point where the body was found. The width of the road where the car left the center of the track was 28 feet. The road was hard clay surface, but ten feet from the center of the road the soil is sand. The tracks were visible four days afterwards, and it had rained in the meantime. From the south side of the road to where Mr. Patterson said the body was found was about 31 feet. The direction of this road from the Linden Road is almost due west, with an open view all the way.

The defendant offered no evidence, but moved to dismiss the action or for judgment as of nonsuit under the Mason Act, chapter 73, Public Laws 1913. Motion overruled, and defendant excepted.

The jury returned a verdict adverse to the defendant, finding him guilty of involuntary manslaughter. From the judgment pronounced thereon the defendant appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*H. L. Brothers and Bullard & Stringfield for defendant.*

STACY, J. We have not stated all the evidence, because the foregoing would seem to be sufficient to dispose of the defendant's appeal. Considering the testimony in its most favorable light to the State, the accepted position on a motion of this kind, we think his Honor properly

submitted the case to the jury. *S. v. Oakley,* 176 N. C., 755; *S. v. Carlson,* 171 N. C., 818. The Court's inquiry upon such a motion is directed to the sufficiency of the evidence to support or warrant a verdict. (*S. v. Hart,* 116 N. C., 976), and not to its weight or to the credibility of the witnesses. *S. v. Utley,* 126 N. C., 997.

The degree of negligence necessary to be shown on an indictment for manslaughter, where an unintentional killing is established, is such recklessness or carelessness as is incompatible with a proper regard for human life. *S. v. Gash,* 177 N. C., 595; *S. v. McIver,* 175 N. C., 761; *S. v. Tankersley,* 172 N. C., 955. The negligence must be something more than is required on the trial of an issue in a civil action, but it is sufficient to carry the case to the jury in a criminal prosecution where it reasonably appears that death or great bodily harm was likely to occur. *S. v. Gray,* 180 N. C., 697. A want of due care or a failure to observe the rule of the prudent man, which proximately produces an injury, will render one liable for damages in a civil action, while culpable negligence, under the criminal law, is such recklessness or carelessness, resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others. *S. v. Goetz,* 83 Conn., 437; 30 L. R. A. (N. S.), 458.

Again, it is generally held that where one is engaged in an unlawful and dangerous act, which is itself in violation of a statute, intended and designed to prevent injury to the person, and death ensues, the actor would be guilty of manslaughter at least. *S. v. McIver, supra.* C. S., 2618, provides: "No person shall operate a motor vehicle upon the public highways of this State recklessly, or at a rate of speed greater than is reasonable and proper, having regard to the width, traffic, and use of the highway, or so as to endanger the property or the life or limb of any person." Then follows an enumeration of certain rates of speed at given places which shall be deemed as violations of the section.

But in fixing the maximum rate within a city or upon the public highways, the statute does not purport to establish a rate of speed which will be lawful under all circumstances. It must not be greater than is "reasonable and proper," considering the time and place, and "having regard to the width, traffic, and use of the highways," nor should it be such "as to endanger property or the life or limb of any person." Proper speed, under given conditions, may be excessive speed under others; and proper speed in the daytime might be grossly excessive at night. *S. v. O'Brien,* 32 N. J. L., 169; *Commonwealth v. Pierce,* 138 Mass., 165.

Section 2616 of the Consolidated Statutes also provides, in part, as follows: "Upon approaching a pedestrian who is upon the traveled part of any highway, and not upon a sidewalk, . . . every person operating a motor vehicle shall slow down and give a timely warning or signal

with his bell, horn, or other device for signaling. Upon approaching an intersecting highway, a bridge, dam, sharp curve, or deep descent, a person operating a motor vehicle shall have it under control and operate it at such speed, not to exceed ten miles an hour, having regard to the traffic then on such highway and the safety of the public."

If the defendant was operating his machine in disregard of these regulations, and thus occasioned the death of the deceased, he was engaged in an unlawful act. "Involuntary manslaughter," says Wharton Am. Crim. Law (11 ed.), sec. 426, p. 622, "is where death results unintentionally, so far as the defendant is concerned, from an unlawful act on his part not amounting to a felony." It does not appear from the evidence why the defendant left the central part of the road and ran out of the beaten path or traveled portion of the highway, nor does it appear why he did not turn aside so as to avoid the collision. Under these circumstances, the jury might well have found that the injury occurred in consequence of the recklessness of the driver, amounting to criminal negligence. *S. v. Biewen,* 169 Iowa, 256. See, also, *S. v. Stitt,* 146 N. C., 643.

The deceased was walking on the outer edge of the road, far from the traveled part of the highway, where he had a right to be. There were no other machines near. The view was unobstructed, and it is difficult to understand how the defendant could have struck the deceased with his car, under all the circumstances, without being guilty of culpable negligence. At any rate, the evidence was sufficient to be submitted to the jury, and they have so found.

No error.