STATE v. CHARLES JESSUP.

(Filed 12 April, 1922.)

1. **Automobiles—Statutes—Criminal Negligence—Evidence—Manslaughter—Criminal Law.**

   Upon a trial for manslaughter alleged to have been caused by the defendant's criminally and recklessly driving an automobile upon a public highway under circumstances prohibited by statute, there was evidence tending to show that the deceased, being driven by his son in another automobile, on the proper side of an improved road, twenty-two feet wide, was rounding a curve near an embankment on the outside of the road, when the prisoner and others, in an intoxicated condition, going in the opposite direction, with unobstructed view, ran across from inside of the road where he should have remained, and with fifteen feet to spare, collided with the automobile in which the deceased was riding, causing his death: *Held* sufficient to sustain a verdict of conviction. C. S., 2617, 2618; *S. v. Rountree,* 181 N. C., 535, cited and applied.

2. **Same—Intoxication.**

   Where there is evidence that the defendant by his criminal recklessness in driving his automobile on a public highway, prohibited by statute, collided with that in which the deceased was riding, causing his death, testimony as to the intoxicated condition of other men in the automobile with him at the time, together with the fact that some of them had whiskey, and the defendant's effort to borrow money to enable his brother to buy whiskey, with direct evidence of the defendant's intoxicated condition, is

competent as a part of the *res gestæ* to show the defendant's opportunity to obtain whiskey at the time, and the purpose to have it on this occasion. C. S., 2617, 2618.

**3. Evidence—Opinion Upon the Facts—Intoxication—Automobiles—Criminal Negligence—Statutes.**

> Where relevant as a part of the *res gestæ* upon the trial for manslaughter, for the criminally reckless driving of an automobile on a public highway (C. S., 2617, 2618), the impression of a witness from his own observation of the conduct and appearance of the defendant at the time, that the defendant was then under the influence of whiskey, is competent.

APPEAL by defendant from *Long, J.,* at October Term, 1921, of SURRY.

Indictment for manslaughter, caused by negligently running an automobile, thereby causing the death of one O. N. Swanson.

There was evidence on the part of the State tending to show that the Swansons, the father, O. N. Swanson, and son, Claude Swanson, driver, on the front seat, two daughters and a younger son on a rear seat, were traveling in a Mitchell car on the improved highway going north from Pilot Mountain to Westfield about three o'clock p. m. on 12 June, 1921.

About four miles from Pilot Mountain, and on a curve in said road, a Ford, driven by the defendant and occupied by himself and other young men, had a head-on collision with the Mitchell car just at the curve, and in consequence of such collision Mr. O. N. Swanson was seriously injured and died soon afterwards. At the curve, the point of collision, the road was twenty-two feet wide. Immediately to its right was an embankment. The Mitchell car, going north, was running to the right of the center of the road, within twelve or fifteen inches of the embankment. The Ford car, coming south, instead of taking the right at the curve, cut across the curve, and at the time of the collision was plainly on the right of way of the Mitchell car. The radiator of the Mitchell car showed that it was a head-on collision. After the collision (record, p. 7), "The Swanson car was something like a half foot from the bank; that is the right front wheel. The Jessup car something like 2½ feet, probably three feet. The rear of the Swanson car was 2½ feet from the bank and the rear of the Jessup car 4 or 4½. Where the cars were standing when I saw them, they were further towards Westfield. I do not know where the cars had skidded; both cars were pointing toward the bank." At the point of collision, the Ford car, if properly driven, would have had 15 feet of passage room to the right of the Mitchell car. There was a road called the Bryant road which entered the improved highway about opposite the point of collision.

Cy Bryant testified (record, p. 9) : "I live about three hundred yards west of the place where the collision occurred. There is a road leading

from my father's house to the main road.  At the time of the collision,
I was coming from my father's house and got to the cherry tree where
I saw two cars coming, *both on the right, hugging the curve.*  I stopped
about 30 steps from the highway.  The Swanson car was going north,
the Jessup car south.  The Swanson car pulled to the right, very near
the bank; the Jessup car cut to the left right against Swanson, then I
heard the crash.  Charlie Jessup was driving.  Claude Swanson was
driving Swanson's car.  I stepped the distance from where I stopped to
the road, and it was thirty steps."

At the curve one could see from the south going north 127 feet.  There
is evidence that the defendant was drinking the day of the accident, and
his reputation as a whiskey drinker was bad.

There was evidence for defendant tending to show that the collision
occurred at or near the center of the highway; that Charles Jessup was
not drinking or under the influence of liquor on the occasion; and at or
about the time of the occurrence the attention of the defendant was
attracted by the approach of a third car, from a side road, and which
was about to enter the highway at or near the point where defendant's
car then was.  The jury rendered a verdict of guilty of manslaughter,
and judgment on the verdict, and defendant excepted and appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for
the State.*

*J. H. Folger for defendant.*

HOKE, J.  Notwithstanding the earnest and forcible presentation of
his case by defendant's counsel, we are constrained to hold that no
reversible error has been shown in the record.

The jury, accepting the State's version of the matter, have convicted
the defendant of causing the death of O. N. Swanson, as charged in the
bill of indictment, by his criminal negligence in driving his car on the
wrong side of the road, and in operating the same without taking reason-
able and proper care, contrary to the provisions of the statute applicable.
C. S., 2617-2618.

Both of these sections were enacted as necessary to a proper protection
of persons upon the highways of the State, and because, with the high-
power vehicles now very generally in use, a violation of these regulations
was not unlikely to result in serious and oftentimes in fatal injuries.  In
the recent case of *S. v. Rountree,* 181 N. C., 535, *Associate Justice Stacy,*
in a clear and forcible opinion, deals with these statutes and the under-
lying reasons for their enactment, and it was there held, among other
things, as pertinent to the facts of the present record:

"Where one is tried for the reckless driving of an automobile made
criminal by our statute (C. S., 2618), and an unintentional killing has

been established by him, evidence is sufficient for conviction of manslaughter which tends to show such recklessness or carelessness as is incompatible with the proper regard for human life or limb, or that such injury was likely to occur under the circumstances.

"The commission of a dangerous act, in itself a violation of a statute, intended to prevent injury to the person, when death to another ensues, renders the actor guilty of manslaughter at least.

"Where an act makes reckless driving of automobiles upon the public highways, under certain conditions, a criminal offense, and there is a proviso fixing various speed limits thereon as to different localities and conditions criminal negligence *per se* and indictable, the proviso as to the speed limits does not necessarily preclude conviction of the offense prescribed in the body of the act for recklessness while driving at less speed."

It was insisted for defendant that prejudicial error was committed in the admission of certain testimony over his objection, tending to show that others of the party had liquor on the occasion and showed evidences of being under its influence. There was direct testimony to the effect that defendant also had taken whiskey at the time, and the statements objected to were not only competent as presenting the conditions existent at the time of the occurrence, a part of the *res gestæ,* but also as tending to show that defendant had every opportunity for obtaining whiskey at the time. And the testimony also objected to that defendant on the morning of the same day had endeavored to borrow $5 for the purpose, professed by him at the time, to enable his brother to buy whiskey, bore directly on the fact that defendant and his party in the car had the purpose of providing themselves with whiskey for the occasion.

Again it is urged that a witness was allowed to express that "defendant a short time before the occurrence was under the influence of liquor." This was given as the impression of the witness from the conduct and appearance of defendant under the witness's actual observation at the time, and where relevant, is held competent as the statement of a fact. *Taylor v. Security Co.,* 145 N. C., 383; *Gilliland v. Board of Education,* 141 N. C., 482.

The case, in its essential aspects, is controlled by *S. v. Rountree, supra,* and as stated, there has been no error committed in the trial of the cause.

No error.