### STATE v. A. B. CRUTCHFIELD.

(Filed 23 April, 1924.)

**Homicide—Criminal Law—Evidence—Verdict—Nonsuit—Statutes—Questions for Jury.**

Evidence that the defendant, while driving his automobile at night at about 30 or 35 miles an hour, along a public highway, without lights, signals, or other warnings of approach, suddenly appeared and struck and killed a lad, going in the opposite direction, who was walking along the edge of the highway in a line with other boys, by turning in and out among them, is sufficient evidence to take the issue of murder to the jury, and to sustain a verdict of manslaughter, and to deny defendant's motion as of nonsuit under the provisions of C. S., 4643. The decisions of reckless driving of automobiles upon the public highways of the State in violation of statute, cited and applied.

APPEAL by defendant from *Lane, J.,* at December Term, 1923, of FORSYTH.

Criminal prosecution, tried upon an indictment charging the defendant with murder in the first degree. The jury convicted him of manslaughter, "with a request to the court for extreme mercy." From a judgment of not less than ten nor more than fifteen years in the State's Prison at hard labor, the defendant appeals, assigning errors.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*John D. Slawter and M. L. Mott, Jr., for defendant.*

STACY, J. The defendant was charged with murder in the first degree, in that, it is alleged, he did unlawfully, feloniously and with

premeditation and deliberation murder and kill one Peter Leight, on or about 22 April, 1923, by striking him and running over him with an automobile.

The occasion and manner in which the deceased, a 6-year-old boy, was killed is succinctly described by James Crews, a witness for the State, as follows:

"On the evening of 22 April, 1923, six boys, including myself, went across the railroad to hear a band play (this was in the village of Walkertown), and as we came through a grove we picked up some pennants, or flags, which were attached to a string, being all on one string, and started down the road, each boy holding to the string of pennants. It was strung out full length as we were carrying it, one boy having hold of one end and another boy holding the other end, and the other boys scattered out between. We were all going south, on the left-hand side of the road, in the side-ditch. This was a soil-top road, about 35 feet wide, and we were going down the road, one after another, single file, in the side-ditch. I had hold of the back end, and George Leight had hold of the front end, and Peter Leight, the boy who was killed, had hold of the pennant in front of me. Peter was about 6 years old. As we were going along in the side-ditch, a Ford coupé dived in and hit Peter. I did not see the car until it was right on us. It was going north, meeting us, and when it struck Peter it knocked him about 30 feet. This was about 8 o'clock. The houses were all lighted. There were no lights on the car at the time it hit Peter, and the driver did not blow any horn. The car was running about 30 or 35 miles an hour. After the car struck Peter, it just kept on going at the same rate of speed; didn't stop at all."

Cross-examination: "Pete was standing out in the road, about 10 inches further than the other boys. The car was right at Pete before I saw it; I saw it just at the time it hit him; he was only about 4 or 5 feet in front of me, and a little bit out in the road. The car came in and went out, and missed me. If it hadn't cut back into the road it would have hit me also."

Redirect examination: "The car came in towards the bank, and then went out this way (illustrating). As it turned in, it struck Pete and turned immediately out. If it had gone straight along the road, it would not have hit any of us."

The defendant at first denied to the sheriff of the county that he struck the child, but later admitted doing so, and stated that he was not aware of it until his wife called it to his attention.

The State, also, in order to fix criminal responsibility on the defendant, offered evidence tending to show that he was drinking on the afternoon of the same day, and was in an intoxicated condition a short time after the homicide.

The defendant offered no evidence.

After the State had produced its evidence and rested its case, the defendant moved to dismiss the action or for judgment as of nonsuit, under C. S., 4643. This motion was properly overruled.

The record contains, in all, thirty exceptions and twenty-seven assignments of error, but apparently no one of them presents any new or novel point of law not heretofore settled by our decisions. We have examined all the assignments of error with care, and it would only be a work of supererogation and "threshing over old straw" to deal with them *seriatim* in an opinion. The case has been tried in substantial compliance with the law bearing on the subject, and we have discovered no ruling or action on the part of the trial court which we apprehend should be held for prejudicial or reversible error.

The law relating to the reckless driving of automobiles, in violation of statutes designed and intended to protect human life and limb, has been recently considered by us in the following cases: *S. v. Sudderth,* 184 N. C., 753; *S. v. Jessup,* 183 N. C., 771; *S. v. Rountree,* 181 N. C., 535; *S. v. Gash,* 177 N. C., 595; *S. v. McIver,* 175 N. C., 761.

There is no legal ground appearing on the record for a reversal of the judgment. The validity of the trial must be sustained.

No error.