## STATE v. W. W. LOWERY.

(Filed 24 November, 1943.)

**1. Automobiles § 32a—**

The violation of a traffic law, unintentionally or merely through a want of ordinary care, will not constitute culpable negligence unless the prohibited act is in itself dangerous—*i.e.*, likely under the circumstances to result in death or great bodily harm.

**2. Automobiles § 32b—**

The violation of statutes, against driving an automobile while intoxicated, C. S., 2621 (286), and against failure to give certain signals, C. S., 2621 (301), if conceded, is not sufficient to sustain a prosecution for involuntary manslaughter, unless a causal relation is shown between the breach of the statute and the death.

**3. Automobiles § 32c—**

In a criminal prosecution for a felonious slaying, by an automobile collision, where all testimony tended to show no excessive speed on the part of defendant, no clear evidence of a left turn in front of the oncoming car which hit defendant's car causing the death, no failure to give any signal which defendant was under obligation to give, and the only evidence of intoxication of the defendant was by one witness, contrary to that of several others, and where there was no contention by the State that defendant's conduct was such as to sustain a conviction at common law irrespective of the statutes, C. S., 2621 (286), and 2621 (301), motion for judgment of nonsuit should have been allowed.

APPEAL by defendant from *Ervin, Special Judge,* at May Term, 1943, of ROWAN.

Criminal prosecution tried upon indictment charging the defendant with the felonious slaying of one Mrs. A. J. Rohr.

The evidence discloses that the automobile wreck which caused the death of Mrs. Rohr occurred on Highway No. 29, south of Salisbury, N. C., on Saturday night, 17 October, 1942. The highway is forty feet wide with four lanes for traffic.

C. C. Allison, a colored man, testified that he was driving south on this highway about 10:30 or 11:00 o'clock on Saturday night in company with a colored man and woman. That he was operating a 1937 Ford automobile, which belonged to one Sherrill, who was in the car with him. "That as he came over a little rise around the curve he saw the car operated by W. W. Lowery coming north meeting him on his side of the road; and the said car cut across the road right in front of him to the left at a point about twenty feet before he reached the driveway of Mr. Kluttz. He didn't observe any signal from the other car and collided with his car. The cars came to rest on his side of the road." On cross-examination, this witness testified that he had drunk one bottle

of beer about 6:00 o'clock on Saturday and that the other people with him in the car were "feeling pretty good." That he saw the Lowery car for "as much as 300 yards away." That the front wheels of the Lowery car had reached the left shoulder of the highway when he (Allison) hit him.

Arthur Harkey testified that he arrived at the scene of the wreck immediately after it occurred, but did not see the wreck. He also testified, "From the conversation I had with him and the observation of Lowery, he was drinking pretty heavy." His further testimony discloses that the only conversation he had with the defendant was while Lowery was still in the car, under the wheel. Harkey was standing on the right-hand side of the car and asked Lowery about taking them to the doctor. Lowery said none of them were hurt.

The defendant testified: That he left his home about 8:00 o'clock p.m., on Saturday, 17 October, 1942, to go after his sons who were at a corn shucking. He invited M. J. Ford to go with him. According to the evidence, Mr. Ford requested the defendant to ride up the road to a filling station. While at the filling station Mr. Ford was talking with some women, and one of them asked him for a drink. He asked the defendant to take them up the road where they could get something to drink. The defendant further testified: "I had not had any liquor, beer, wine or any intoxicant to drink that day. I slowed down and parked in front of the walkway, which was beyond the driveway. Someone said, 'Back up and pull in the driveway.' I backed up about six feet and started to pull in when this car came over the hill at a high rate of speed and run into me. There wasn't anything coming when I started to back up. I stayed there about fifteen or twenty minutes after the collision. Two cars came up and carried the ladies to the hospital. After we got the women to the hospital me and Allison were there together. He helped me to get my car loose from his and agreed to settle it between us as to damages. I didn't think any of the women were hurt very much. He went off to get a wrecker and I went home. He did not say anything about calling the law. The Negroes and Mr. Ford were present. I did not see Mr. Harkey there. I went straight home from there where I saw my wife and children. . . . I hadn't had anything to drink at the filling station. I did not know the place. I was headed North. I drove past the driveway, parked in front of the walkway and started back to the driveway and backed up about six feet to pull into the driveway. I was not under the influence of intoxicants. I was not there when the officers arrived, I left because me and him came to an agreement."

Patrolman Lassiter testified that in response to a call he went to the scene of the wreck. Mr. Lowery, the defendant, was not there and he

did not see him until two nights later. "Allison was there. He was sober." On cross-examination, he testified: "I smelled alcoholic odor on Allison's breath. That no skid marks were made by either car until after the impact. The front wheels of the Chevrolet appeared to be about the edge of the road on his left crossways of the road, not quite on the shoulder. There was twenty-five or thirty feet of road unblocked on the left going South. It was about 11:00 o'clock and quite a number of people were present, including Allison and Mr. Harkey, neither said anything about Lowery being intoxicated or drinking. Mr. Lowery stated in response to a question by the court (at the preliminary hearing) that he had driven past the driveway and backed up and started back across."

M. J. Ford testified: "That Lowery came to his house about 8:30 and asked him to go with him to the country. They came to Charlie Coughenhour's place. I met four girls down there, Mrs. Kluttz, Mrs. Scarboro, Mrs. Brandon and Mrs. Rohr. I never had met Mrs. Brandon or Mrs. Rohr. Mrs. Brandon asked me for a drink and I did not have one. I suggested that we go up the road and get one. I asked Mr. Lowery to carry us up there, which he did. We drove up in front of the brick house in front of the walkway where they said stop. They told Mr. Lowery to back up and pull in the driveway. Mr. Lowery backed towards the driveway. He had to back out into the road to straighten up. When he started towards the driveway the wreck happened. The front wheels were off the cement. The colored fellow was in the second lane when he got right at us. Instead of going around he pulled back to the outside curb on the right. His radiator hit about the door. He was going fast. Mr. Lowery was sober. I never saw him take a drink of liquor in my life. I was in his presence from 8:30 until the wreck. We stayed at the scene of the wreck twenty-five or thirty minutes. I did not see Mr. Harkey. No one was there when we left."

Mrs. Wilma Scarboro testified: "That she was with Mr. Lowery and the others that night. Mr. Lowery was sober."

Mrs. Ruth Pendix testified: "That she had been in the presence of Mr. Lowery about an hour and was in the car with him at the time; that he was perfectly sober. We drove past the driveway and went to back up. There wasn't a car in sight. We went to turn into the driveway. This car came over the hill and hit us before we could get into the driveway."

C. C. Allison, who testified for the State, admitted that he had been arrested and convicted for drinking. Harkey admitted that he was convicted about five years ago for transporting liquor. That he tried to wreck the sheriff's car and the officers shot the tires down on his car. He paid a fine of $500.00 and the damage to the sheriff's car.

The defendant Lowery admitted that he had been indicted one time for driving while intoxicated.

The defendant's witness Ford admitted he had been indicted twice for drinking.

Harkey and Lowery offered evidence as to their good character in recent years.

Verdict: Guilty of involuntary manslaughter. Judgment: That the defendant be imprisoned in the State's Prison at hard labor for not less than two nor more than three years.

Defendant appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for the State.*

*C. M. Llewellyn for defendant.*

DENNY, J. The defendant excepts and assigns as error the refusal of his Honor to sustain his motion for judgment as of nonsuit.

The State is relying upon the breach of two statutes by the defendant to sustain the judgment below, to wit, section 101, chapter 407, Public Laws of 1937, N. C. Code of 1939 (Michie), section 2621 (286), which makes it unlawful for any person to drive an automobile on the highways of the State while under the influence of intoxicating liquor or narcotic drugs; and section 116 of the same Act, N. C. Code of 1939 (Michie), section 2621 (301), which requires the driver of an automobile upon a highway to give certain signals before starting, stopping or turning said motor vehicle from a direct line of traffic.

The real question presented for our consideration is whether or not the evidence presented on this record is sufficient to show culpable or criminal negligence on the part of the defendant. The violation of the statutes referred to herein, if conceded, is not sufficient to sustain a prosecution for involuntary manslaughter unless a causal relation is shown between the breach of the statute and the death of Mrs. Rohr. *S. v. Satterfield,* 198 N. C., 682, 153 S. E., 155. The violation of a traffic law unintentionally or merely through a want of ordinary care would not constitute culpable negligence unless the prohibited act was in itself dangerous—*i.e.,* likely under the circumstances to result in death or great bodily harm, *S. v. Stansell,* 203 N. C., 69, 164 S. E., 580, in which case the Court said: "Ordinary negligence is based on the theory that a person charged with negligent conduct should have known the probable consequence of his act; culpable negligence rests on the assumption that he knew the probable consequences but was intentionally, recklessly, or wantonly indifferent to the results. With respect to the breach of a statute enacted in the interest of public safety a basic concept may

involve the distinction between the intentional violation of the statute and the negligent failure to observe its provisions."

There is no evidence that the defendant was driving at an excessive rate of speed. The only evidence that the defendant made a left turn and drove his car in front of the Sherrill car, which was driven by Allison, was the testimony of Allison, and his evidence is not clear as to whether Lowery was approaching on the right or left side of the road. The defendant and two other witnesses testified that defendant's car was driven on the left side of the highway in front of the Kluttz home, and that the defendant was requested to back his car and enter the driveway of the Kluttz home. That at the time he backed his car into the highway, for the purpose of entering the driveway, no car was approaching from the north, but before the defendant could complete the operation the car driven by Allison approached at a high rate of speed and ran into defendant's car. Allison testified he saw the Lowery car for "as much as three hundred yards." If this is correct and the defendant was approaching him or backing his car in the lane of traffic on Allison's right, it was the duty of Allison to operate his car with due caution and circumspection under the circumstances. He testified, however, he did not make any effort to slacken his speed. There is evidence to the effect that the front wheels of the defendant's car were on the shoulder of the highway entering the driveway, at the time of the wreck, and that a distance of twenty-five or thirty feet of the highway on the left going south was unobstructed. One witness testified that Allison was in the second lane until "he got right at us. Instead of going around he pulled back to the outside curb on the right."

Furthermore, if defendant was parked on the left-hand side of the road, and no car was in sight at the time he undertook to back into the road for the purpose of entering the driveway at the Kluttz home, he was under no obligation to give a signal. *Stovall v. Ragland,* 211 N. C., 536, 190 S. E., 899. Moreover, the difficulty in seeing a hand signal at night is pointed out in the case of *Butner v. Spease,* 217 N. C., 82, 6 S. E. (2d), 808, in which the Court said: "It is a matter of common knowledge that a hand signal can seldom be seen by the driver of an approaching car under the circumstances here disclosed, because to him the other driver's hand would be in the shadow of his own light."

The only evidence to show a breach of the statute making it unlawful for a person to drive an automobile on the highways of this State under the influence of liquor, was the testimony of the witness, Harkey, to the effect: "From the conversation I had with him and the observation of Lowery, he was drinking pretty heavy." The defendant and four other witnesses testified the defendant was sober and had not had anything to drink. The witness Allison, the driver of the other car involved in the

wreck, admitted he had drunk a bottle of beer earlier in the evening and that his companions in the car were "feeling pretty good." The investigating officer testified: "I smelled alcoholic odor on Allison's breath." Neither Allison nor Harkey informed the investigating officer that Lowery was drinking and both were present while the officer was investigating the accident.

In the case of *S. v. Satterfield, supra,* this Court said: "There is ample evidence of the defendant's disregard of the statute; his failure to obey the law was the negligent omission of a legal duty. *Ledbetter v. English,* 166 N. C., 125. But this was not sufficient within itself to warrant conviction. There are yet to be considered the element of causal relation, and, indeed, of proximate cause; for mere proof of a negligent act does not establish its causal relation to the injury." There is no contention on the part of the State that the conduct of this defendant was such as to sustain a conviction at common law irrespective of the violation of the statutes relied upon, as was the case in *S. v. Huggins,* 214 N. C., 568, 190 S. E., 926; *S. v. Landin,* 209 N. C., 20, 183 S. E., 526; *S. v. Palmer,* 197 N. C., 135, 147 S. E., 817; *S. v. Trott,* 190 N. C., 674, 130 S. E., 627; *S. v. Gray,* 180 N. C., 697, 104 S. E., 647; *S. v. Gash,* 177 N. C., 595, 99 S. E., 337; and *S. v. McIver,* 175 N. C., 761, 94 S. E., 682.

Moreover, as pointed out in *S. v. Cope,* 204 N. C., 28, 167 S. E., 456, there is a difference in negligence which renders one civilly liable in damages and culpable or criminal negligence in the law of crimes. *Stacy, C. J.,* speaking for the Court, in the above case, said: "An unintentional violation of a prohibitory statute or ordinance, unaccompanied by recklessness or probable consequences of a dangerous nature, when tested by the rule of reasonable prevision, is not such negligence as imports criminal responsibility. *S. v. Stansell, supra; S. v. Agnew,* 202 N. C., 755, 164 S. E., 578; *S. v. Satterfield,* 198 N. C., 682, 153 S. E., 155; *S. v. Tankersley,* 172 N. C., 955, 90 S. E., 781; *S. v. Horton,* 139 N. C., 588, 51 S. E., 945."

We think the evidence as to the failure of the defendant to give a signal as required by the statute, when considered in its most favorable light for the State, is insufficient to show culpable negligence. As to the breach of the other statute upon which the State relies to sustain the trial court, conceding that there is some evidence of the intoxication of the defendant, there is no evidence on this record of reckless driving or other misconduct on the part of the defendant resulting from intoxication which shows such proximate causal relation between the breach of the statute and the death of Mrs. Rohr as is essential to a prosecution for involuntary manslaughter, *S. v. Satterfield, supra.* It is in this respect that this case is distinguishable from other decisions of this

Court involving violations of the statute which makes it unlawful to drive an automobile on the highways of the State while under the influence of intoxicating liquor or narcotic drugs. *S. v. Landin, supra; S. v. Dills,* 204 N. C., 33, 167 S. E., 459; *S. v. Harvell,* 204 N. C., 32, 167 S. E., 459; *S. v. Palmer,* 197 N. C., 135, 147 S. E., 817; *S. v. Leonard,* 195 N. C., 242, 141 S. E., 736; *S. v. Jessup,* 183 N. C., 771, 111 S. E., 523.

The defendant's motion for judgment as of nonsuit should have been allowed.

Reversed.