## STATE v. WEAVER OGLE.

(Filed 20 September, 1944.)

**1. Automobiles § 32e—**

Evidence showing that one driving an automobile, with knowledge of the danger, heedlessly cut in front of another motor vehicle, traveling in the same direction and immediately in his rear, thereby causing a collision and damage, is sufficient to be submitted to the jury in a criminal prosecution for reckless driving.

**2. Same—**

Where two motor vehicles are traveling very near each other, on the same road and in the same direction, the lead car being on the right-hand side of the road and the rear car being a little behind and to the left— or "nearly side by side"—and there is evidence that the lead car turned to the left, which the driver thereof denied, causing the rear car to strike and injure a pedestrian, the evidence is insufficient to be submitted to a jury in a criminal charge of reckless driving against the driver of the lead car.

APPEAL by defendant from *Nettles, J.,* at May-June Term, 1944, of MADISON.

Criminal prosecution tried upon indictment charging the defendant with (1) reckless driving, and (2) assault with a deadly weapon, to wit, an automobile, with intent to kill.

Verdict: Guilty as charged in the bill of indictment.

Judgment: Eight months on the roads.

The defendant appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for the State.*

*Guy V. Roberts and Jones, Ward & Jones for defendant.*

STACY, C. J. The record discloses that on the night of 7 August, 1943, about 10:30 or 11:00 p.m., Charles Thomas, Jr., while standing with three companions on a highway bridge over Bull Creek in Madison

County, was seriously injured as a result of the collision between two automobiles, one driven by Weaver Ogle and the other by Vernon (Buster) Cody. Both Ogle and Cody were returning from Marshall to their respective homes on the Bull Creek road, which road intersects the Marshall-Mars Hill highway about fifty feet east of the bridge on which the accident occurred.

As the two cars approached the bridge, going in the same direction, the Ogle car was in front on its right side of the road, and the Cody car was close behind and somewhat to the left of the lead càr, or "nearly side by side" as some of the witnesses put it. They were traveling at an estimated speed of 15 to 20 or 35 to 40 miles an hour, and neither operator had a driver's license. Both cars were equipped with lights and brakes. Both drivers saw the boys on the north side of the bridge. Ogle waved at them as he was passing. It seems that the running board of the Cody càr brushed against one of the boys, Wayne Gosnell, and then the front of the Cody car struck the left rear fender of the Ogle car, which caused it, the Cody car, to swing around and hit the Thomas boy, breaking his leg. · Cody says he struck the Ogle car because Ogle turned to the left without any signal. This is denied by Ogle and other witnesses. Nevertheless, taking Cody's statement as true, this one circumstance would seem to be insufficient to convict Ogle of reckless driving. *S. v. Folger,* 211 N. C., 695, 191 S. E., 747. His conduct may be such as to import civil liability, G. S., 20-154, but we think it falls short of criminality. *S. v. Lowery,* 223 N. C., 598, 27 S. E. (2d), 638; *S. v. Cope,* 204 N. C., 28, 167 S. E., 456; *S. v. Stansell,* 203 N. C., 69, 164 S. E., 580; *S. v. Satterfield,* 198 N. C., 682, 153 S. E., 155.

Of course, if Ogle, with knowledge of the danger, heedlessly cut in front of the rear car and thereby caused the collision, as the State contends, the case was properly submitted to the jury. *S. v. Satterfield, supra.* However, the record is barren of any evidence to support this contention. Cody had given no signal that he wanted to pass. Indeed, he says: "I was not trying to pass him. . . . He turned across in front of me and I didn't have time to stop. . . . The cars hit on the side; they didn't hit on the tail end. . . . I was not behind him; I was by the side of him. . . . The cars went twelve or fifteen feet after they came together." Cody knew that Ogle intended to turn left into the Bull Creek road about fifty feet east of the bridge. Cody himself intended to pull into the filling station on his left at the end of the bridge. It thus appears that Cody was driving too near the Ogle car and was on his left side of the bridge at the time of the collision. See *Austin v. Overton,* 222 N. C., 89, 21 S. E. (2d), 887, and authorities there cited.

The case against Ogle is hardly sufficient to survive the demurrer. G. S., 15-173.

Reversed.