STATE v. EBENEZER COLA WESTON (Nos. 33 AND 34).

(Filed 20 March 1968)

1. Automobiles § 110;   Negligence § 31—

 The wilful, wanton or intentional violation of a safety statute, or the inadvertent or unintentional violation of such statute when accompanied by recklessness amounting to a thoughtless disregard of consequences or a

heedless indifference to the safety of others, constitutes culpable negligence, but the inadvertent or unintentional violation of a safety statute, standing alone, does not constitute culpable negligence.

**2. Automobiles §§ 113, 132— Evidence held sufficient to go to jury on defendant's guilt of manslaughter and passing stopped school bus.**

The State's evidence was to the effect that a school bus stopped on the side of a highway to pick up passengers standing on the other side, that the arm stop signal and the blinking light on the bus were put into operation some 300 feet before the bus stopped, and that defendant driver, who was approaching the bus from the front, passed the stopped bus at a speed of about 25 miles per hour and struck a child who had run into the road to get on the bus. There was further evidence that defendant's view of the highway was unobstructed and that the highway was straight for a mile or more in either direction from the stopped bus. *Held:* The evidence is sufficient to go to the jury on the issues of defendant's guilt of manslaughter and of unlawfully passing a stopped school bus in violation of G.S. 20-217.

**3. Automobiles § 114—**

In a prosecution for involuntary manslaughter arising out of the operation of an automobile, an instruction that defendant would be guilty if at the time of the accident he was operating his car while failing to keep a reasonable lookout *is held* erroneous, since it applies the test of civil liability rather than that of criminal liability.

**4. Criminal Law § 168—**

Conflicting instructions upon a material point, one correct and one incorrect, must be held for reversible error, since the jury is not supposed to know which is the correct instruction, and it must be assumed on appeal that the jury's verdict was influenced by that portion of the charge which is incorrect.

**5. Same—**

Conflicting instructions on a material point in this manslaughter prosecution, although resulting from a *lapsus linguæ* by the trial court, *is held* to warrant a new trial.

**6. Criminal Law § 106—**

If there is substantial evidence of each essential element of the offense charged, defendant's motion for nonsuit is correctly denied.

**7. Constitutional Law § 36—**

Sentence of imprisonment within the statutory limit is not cruel and unusual punishment as forbidden by the North Carolina Constitution, Art. I, § 14.

APPEAL by defendant from *Cohoon, J.,* September 4, 1967 Session of CURRITUCK Superior Court.

Defendant was charged in separate bills of indictment with manslaughter and with unlawfully passing a stopped school bus in violation of G.S. 20-217.

The State offered evidence tending to show substantially the following:

David Lee Heath, III, about twelve years old, testified that on 19 October 1966 he and his brother, Michael Dean Heath, and their cousin, William Sanderlin, had been playing in and about their yard while waiting for the school bus. Their house was located on the south side of highway 158, and a Shell service station was located on the north side of the road. As the bus approached in the north lane, traveling in a westerly direction, the boys were standing about one step off the pavement on the south side of the highway. The bus put out its stop sign, and there was a large blinking red light above the windshield of the bus. The bus stopped on the north side of the highway, across from where the boys were standing. About five seconds after the bus stopped, Michael Dean Heath ran into the road toward the bus, and a car coming from the direction of Elizabeth City hit him. There was a sharp rise from the yard where the boys had been playing, to the highway. There was a board fence three and a half feet high around the pasture west of William Sanderlin's home which was west of the Heath home, and a fence covered with vines which, with the vines, was about five feet high next to and west of the Heath home. Dean was six years old, and was about three and a half to four feet tall.

The testimony of William Sanderlin, Jr. in substance corroborated David Heath. He stated, *inter alia:*

". . . .The school bus put the stop sign out. That stop sign is located on the side of the bus near the road where it stopped. That would be on the driver's side of the bus. I did not notice any other signal about the bus this morning. When Dean started out on the pavement of the highway, the bus was stopped."

Mrs. Frances Sawyer: She was employed as a school bus driver on 19 October 1966. On that date she arrived at the David Heath home about 8:00 o'clock a.m. It was a clear, sunny morning. The road was straight for about one and a half miles in a westerly direction and was straight about two miles from this point in an easterly direction. She was proceeding westerly on highway 158 toward Elizabeth City. She put out the stop sign when she was in front of the Shell station. She explained that when the stop sign is put out the stop light on the front of the bus is turned on. The stop sign functioned properly. She saw two boys standing on a culvert about four or five feet from the edge of the pavement. At that time she saw another boy running up. She first saw them when she was near the Shell station approximately 300 to 350 feet away from them. She

observed a red car approaching her from the Camden-Currituck line. It was traveling at a normal speed and she saw nothing unusual about the manner in which it was being operated. She saw nothing which would have prevented the operator of the car from seeing the bus. She stated:

> "As I stopped my bus, I looked away from the highway and looked through the rear-view mirror, and looked down to put the bus out of gear, and to open the door of the bus, and when I looked back up, the front of the red car had come past the left front fender of the bus, and I heard a slight sound, . . . as I came around behind the bus I observed Dean lying in the highway, and the red car off to one side of the highway.
>
> . . . . .
>
> "As to where was the red car I saw approaching the school bus, when I came to a full stop, it was in front of William Sanderlin's home. I would estimate around 450 feet from where the school bus was stopped."

The witness identified defendant as the operator of the red car and stated that the vehicles were not moved before the patrolman arrived.

Patrolman R. I. Weathersbee: He arrived at the scene of the accident about 8:35 a.m., and found a school bus sitting just east of the David Heath home, facing in a westerly direction, and a 1964 Pontiac automobile on the south shoulder about 115 feet east of the front bumper of the school bus. He found a blood spot in the south lane of highway 158, 95 feet 3 inches east of the front bumper of the bus, and 14 feet 9 inches west of the front bumper of the Pontiac automobile. He found a small indentation about 3 inches in diameter and about one-half inches deep in the front center of the hood of the Pontiac. The distance between the Sanderlin home and the Heath home was about 500 feet. There was a fence around the pasture between the two houses which was about 20 to 25 feet south of the pavement. The shoulder of the road was about ten feet wide. Defendant told Weathersbee that he was going to Kitty Hawk fishing pier and was traveling at a speed of about 58 to 60 miles per hour, and that when he was in the vicinity of a bridge at the Camden-Currituck line, he observed a school bus coming toward him, and the bus at that time was approximately in front of a service station, and he began to slow down. When he got to a fence west of the David Heath home, he saw the school bus at about a 28.9¢ gasoline advertisement sign located west of the service station, and the school

bus at that time put out the stop sign. He started applying his brakes and watching the school bus, and he did not think the bus had quite stopped when he passed the front of it. He estimated that he was traveling about 25 miles per hour when he passed the bus. He heard a bump and at that time he put on all the brakes he had, and that he saw a boy "way up there where that blood spot was." He never saw the boy, for he was watching the school bus because he knew he wasn't supposed to pass it when it was giving the signal. He though that after he passed it he would go back and apologize for passing the bus. He had good brakes, and although he had a wooden right foot, this did not prevent him from using his foot to accelerate or brake the car in a proper manner.

The officer stated it was approximately 300 feet from the bus to the 28.9¢ sign at the service station. He described a red light located on the school bus as being situated in the centermost part of the top of the cab and being about 8 to 10 inches in diameter. There was an arm on the left side of the bus which extended outward with the letters STOP written on it. The arm was about 18 inches long and about 5 or 6 inches wide. It was white, with black letters.

David Heath, Jr.: He was the father of Michael Dean Heath. The fence surrounding the pasture between his house and the Sanderlin house was about 35 or 40 feet from the edge of the pavement on 19 October 1966. The pine trees in his front yard would be approximately 45 to 50 feet from the edge of the pavement.

It was stipulated that about 45 minutes after the accident occurred the battery in the bus was in a run down condition. The ignition switch was on and the motor was not running. When a jumper cable was applied to the battery, the red light over the windshield began to blink. This was a flashing light. The lever which operated the stop arm was in an "on" position, but at that time the stop arm was not out. However, upon starting the motor and charging the vacuum chamber, the stop arm operated properly. It was further stipulated that Michael Dean Heath died on 21 October 1966 as a result of the injuries received when he was struck by the car driven by defendant.

At the close of the State's evidence defendant made motions for judgment as of nonsuit in both cases. The motions were denied.

Defendant testified that he was 75 years old and that on 19 October 1966 he was driving his Pontiac automobile on highway 158, and as he approached the area where the accident took place he saw the school bus. He was going east on highway 158 and was meeting the bus. He saw the stop sign on the bus when it was put out, and at that time the bus was near the drive of the Shell station. When

he saw the stop sign, he hit his brakes and came down to 25 or 30 miles per hour. The bus was still moving when the child was struck. He never saw a child anywhere.

On cross-examination he stated that the road was straight, but that he did not see anybody in the highway as he approached the bus. He stated there was nothing to obstruct his vision on the highway.

Defendant offered several witnesses who testified as to his good character.

At the close of defendant's evidence he again moved for judgments as of nonsuit in both cases. The motions were denied.

The jury returned a verdict of guilty as to both charges. Defendant appealed from judgment entered on the verdict.

*Attorney General Bruton and Staff Attorney Vanore for the State. Aydlett & White and Frank B. Aycock, Jr., for defendant.*

BRANCH, J. Defendant assigns as error the trial court's denial of his motions for judgment as of nonsuit.

The often-quoted landmark case of *State v. Cope,* 204 N.C. 28, 167 S.E. 456, defines culpable negligence and distinguishes culpable negligence and the resulting criminal responsibility from ordinary actionable negligence which imports only civil liability. We quote portions of this opinion:

> "5. Culpable negligence is such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others. *S. v. Whaley,* 191 N.C. 387, 132 S.E. 6; *S. v. Rountree, supra* (181 N.C. 535, 106 S.E. 669).
>
> . . . . .
>
> "6. An intentional, wilful or wanton violation of a statute or ordinance, designed for the protection of human life or limb, which proximately results in injury or death, is culpable negligence. *S. v. Palmer,* 197 N.C. 135, 147 S.E. 817; *S. v. Leonard,* 195 N.C. 242, 141 S.E. 736; *S. v. Trott,* 190 N.C. 674, 130 S.E. 627; *S. v. Crutchfield,* 187 N.C. 607, 122 S.E. 391; *S. v. Sudderth,* 184 N.C. 753, 114 S.E. 828; *S. v. Jessup,* 183 N.C. 771, 111 S.E. 523; *S. v. Gray,* 180 N.C. 697, 104 S.E. 647; *S. v. Gash,* 177 N.C. 595, 99 S.E. 337; 2 R.C.L. 1212.
>
> . . . . .
>
> "7. . . . an intentional violation of a prohibitory statute

or ordinance, unaccompanied by recklessness or probable conse-quences of a dangerous nature, when tested by the rule of reasonable prevision, is not such negligence as imports criminal responsibility. *S. v. Stansell, supra; S. v. Agnew*, 202 N.C. 755, 164 S.E. 578; *S. v. Satterfield*, 198 N.C. 682, 153 S.E. 155; *S. v. Tankersley*, 172 N.C. 955, 90 S.E. 781; *S. v. Horton*, 139 N.C. 588, 51 S.E. 945.

"8. However, if the inadvertent violation of a prohibitory statute or ordinance be accompanied by recklessness or probable consequences of a dangerous nature, when tested by the rule of reasonable prevision, amounting altogether to a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others, then such negligence, if injury or death proximately ensue, would be culpable and the actor guilty of an assault or manslaughter, and under some circumstances of murder. *S. v. Trott, supra; S. v. Sudderth, supra; S. v. Trollinger*, 162 N.C. 618, 77 S.E. 957; *S. v. Limerick*, 146 N.C. 649, 61 S.E. 567; *S. v. Stitt*, 146 N.C. 643, 61 S.E. 566; *S. v. Turnage*, 138 N.C. 566, 49 S.E. 913."

The rule as to the intentional or unintentional violations of a speed statute as related to culpable negligence is concisely stated by Denny, J. (later C.J.), in the case of *State v. Hancock*, 248 N.C. 432, 103 S.E. 2d 491, as follows:

". . . The violation of a safety statute which results in injury or death will constitute culpable negligence if the violation is wilful, wanton, or intentional. But, where there is an unintentional or inadvertent violation of the statute, such violation standing alone does not constitute culpable negligence. The inadvertent or unintentional violation of the statute must be accompanied by recklessness of probable consequences of a dangerous nature, when tested by the rule of reasonable prevision. amounting altogether to a thoughtless disregard of consequences or of a heedless indifference to the safety of others. *S. v. Miller*, 220 N.C. 660, 18 S.E. 2d 143."

See 1 N. C. Index, 2d, Automobiles, § 110, footnotes 71, 72 and 73, beginning on page 597, for an exhaustive citation of applicable case law.

The evidence, in the light most favorable to the State, tends to show that defendant was operating his automobile in an easterly direction on Highway 158 at a speed of 58 to 60 miles per hour, on a clear, sunny day, at about 8:00 o'clock a.m. There was nothing to

obstruct his view of the highway, and from the point where the school bus stopped the highway was straight in a westerly direction for one to one and a half miles and in an easterly direction for two miles. The school bus came to a stop when defendant was approaching at a distance of about 500 feet. The arm stop signal and the blinking light on the bus were put into operation 300 feet east of the place where the bus stopped. Defendant passed the stopped school bus at a speed of about 25 miles per hour. At least two of the three children had been standing within one foot of the southern edge of the pavement across from where the bus stopped. Defendant did not see any of the children. Michael Dean Heath died as a result of the injuries received when he was struck by defendant's automobile.

It is a violation of the law to pass a school bus while such bus is stopped and engaged in receiving or discharging passengers therefrom upon the roads or highways of the state. G.S. 20-217. It is also a violation of the law to drive upon the highways of the state carelessly and heedlessly, in wilful or wanton disregard of the rights or safety of others, or to operate a motor vehicle without caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property. G.S. 20-140. These statutes are safety statutes, designed for the protection of life, limb and property.

Applying these recognized rules of law, we hold that the trial judge correctly overruled defendant's motions for nonsuit.

Defendant assigns as error, inter alia, the following portion of the trial judge's charge:

> "So I charge you, gentlemen, with reference to the charge of involuntary manslaughter, that if you find from the evidence and beyond a reasonable doubt that, at the time the deceased, Michael Dean Heath, was struck and killed by the defendant's automobile, that is, the defendant Ebenezer Weston, and that the defendant Ebenezer Weston was guilty of culpable or criminal negligence, as heretofore explained to you by the Court, that is, that he was driving his car at the time and place in question, carelessly and heedlessly, in willful and wanton disregard of the rights or safety of others, or without due caution and circumspection, and at a speed or in a manner so as to endanger or be likely to endanger any person or property then upon said highway, or failed to stop for a stopped school bus with its Stop signal out in receiving or discharging passengers, *or in failing to keep a reasonable lookout;* or, if you find from the evidence and beyond a reasonable doubt that at the time

and place in question the defendant was inadvertently driving his car in violation of the statutes and common law rule, about which I have previously instructed you, in such case made and provided, that such acts and conduct of the defendant were accompanied by recklessness or probable consequences of a dangerous nature, when tested by the rule of reasonable prevision, amounting to a thoughtless disregard of consequences, or a heedless indifference to the safety and rights of others, then I charge you that the defendant would be guilty of culpable or criminal negligence; and if you find from the evidence, and beyond a reasonable doubt, that such culpable or criminal negligence was the proximate cause of the injury and death of Michael Dean Heath, the defendant would be guilty of involuntary manslaughter, and' if you so find beyond a reasonable doubt, it would be your duty to render a verdict of guilty of involuntary manslaughter, against the defendant." (Emphasis ours.)

Here, the trial judge instructed the jury as to several alternatives under which they could find defendant guilty of involuntary manslaughter. One of the alternatives was that the jury should find defendant guilty if it found beyond a reasonable doubt that at the time his automobile struck and killed Michael Dean Heath defendant was operating his car while failing to keep a reasonable lookout. This instruction was erroneous in that it applied the test of civil liability rather than the test of criminal liability. *State v. Cope, supra; State v. Spencer,* 209 N.C. 827, 184 S.E. 835.

It is apparent from the exemplary manner in which the learned trial judge charged the jury in other respects and the able manner in which he presided at this trial that this erroneous portion of the charge was a *lapsus linguæ.* However, this Court has held many times that when there are conflicting instructions upon a material point, one correct and one incorrect, a new trial must be granted. Since the jury is not supposed to know which is the correct instruction, we must assume that the jury's verdict was influenced by that portion of the charge which is incorrect. *State v. Starnes,* 220 N.C. 384, 17 S.E. 2d 346.

It is obvious that this portion of the charge is a material point and, even though apparently inadvertent, is error.

Defendant contends that the trial judge erred in denying his motions for nonsuit as to the charge of passing a school bus while it was stopped on a road or highway and engaged in receiving or discharging passengers therefrom.

We do not deem it necessary to again review the evidence upon

consideration of defendant's motions for nonsuit as to this charge. Suffice it to say that, taking the evidence in the light most favorable to the State and resolving the conflicts therein in favor of the State, as we must do, there is substantial evidence of each essential element of the offense charged. *State v. Thompson,* 256 N.C. 593, 124 S.E. 2d 728; *State v. Bass,* 255 N.C. 42, 120 S.E. 2d 580. The trial court correctly denied defendant's motions for nonsuit.

Nor is there merit in defendant's contention that the judgment entered was excessive. The sentences were within the statutory limit for the offense of which defendant was convicted, and did not constitute cruel and unusual punishment as forbidden by Article I, Section 14 of the Constitution of North Carolina. *State v. LePard,* 270 N.C. 157, 153 S.E. 2d 875.

We have carefully examined defendant's remaining assignments of error and find no prejudicial error affecting the charge of passing a school bus while it was stopped on the road or highway and engaged in receiving or discharging persons therefrom.

As to the charge of involuntary manslaughter:

New trial.

As to the charge of passing a school bus while it was stopped:

No error.