## STATE OF NORTH CAROLINA v. DILLARD PINK RAMEY
### No. 6926SC180

(Filed 30 April 1969)

**Homicide § 9—   restoration of self-defense by quitting argument**

In this manslaughter prosecution in which there was evidence from which the jury might infer that while defendant was at fault in bringing on the encounter, defendant was trying to quit the argument and communicated this fact to the deceased, the trial court erred in failing to instruct the jury that the right of self-defense may be restored to one who has started a fight or entered it willingly by quitting in good faith and giving his adversary notice of such action on his part.

APPEAL by defendant from *Hasty, J.,* September 1968 Schedule "C" Criminal Session, Superior Court of MECKLENBURG.

This cause was formerly before the North Carolina Supreme Court and reported in 273 N.C. 325, 160 S.E. 2d 56, at which time a new trial was awarded the defendant. At the second trial, the defendant was tried upon a bill of indictment charging him with the murder of Ardell Mabry. The State announced that it would not seek a conviction for first or second-degree murder, but would seek a conviction for manslaughter. Defendant entered a plea of not guilty.

The State's evidence tends to show that on 28 May 1967 the deceased and his family resided at 342 Kirby Drive in the Paw Creek section of Mecklenburg County. At the time in question the defendant and his family were neighbors of the deceased. Their houses were 100 to 200 feet apart. At approximately 5 p.m. on 28 May 1967 the deceased and his two sons arrived at their home, and, as they were getting out of their car, the defendant stood on his porch and cursed the deceased. The deceased then called to the defendant, "Old man, you won't come out in the road and call me those names." Defendant answered that he would and cursed the deceased again. The deceased then started out into the road when the defendant reached inside his house and got a rifle and aimed it at the deceased. Deceased then went into his house, got a shotgun, and was walking away from his house when the defendant shot him. State's evidence tends to show that the deceased did not aim his gun at the defendant.

Defendant offered evidence which tends to show that the deceased arrived at his home at approximately 5 p.m. on the day in question and cursed the defendant and asked him to fight. The deceased then went out into the road and drew a knife. Defendant stated that when deceased went out into the road, he (defendant) went into his house and stayed three or four minutes to allow de-

ceased to "cool off". He then went back outside and deceased cursed him again. Deceased went inside his house and got his gun, and walked down to an apple tree located approximately 70 feet from the defendant's house, and pointed the gun at the defendant. Defendant then ran into his house and got his gun. Defendant stated, "And when I got back out, he was moving over toward his — over toward the apple tree and I told him to drop the gun and I told him to drop it again and I said, 'don't do it' and about that time I saw a flash and then I fired."

The jury returned a verdict of guilty of manslaughter and defendant appealed.

*Attorney General Robert Morgan by Deputy Attorney General Harrison Lewis and Trial Attorney Eugene A. Smith for the State.*

*Childers and Fowler by Max L. Childers for defendant appellant.*

Morris, J.

The defendant argues that the trial court committed error in not charging the jury that one is not deprived of the plea of self-defense because he was at fault in entering the encounter, if he voluntarily quit the fight or encounter and communicated that fact to his adversary.

In the present case there is evidence that the defendant started the argument between himself and the deceased by cursing the deceased. Evidence introduced by the defendant, if believed, would tend to show that after the original encounter between the parties the defendant went into his home for three or four minutes to allow the deceased to "cool off"; that he returned to his porch without his gun; that defendant did not get his gun until he saw the deceased coming toward his (defendant's) house with a gun; and that the defendant was asking the deceased "not to do it" when deceased fired his gun.

In *State v. Fairley*, 227 N.C. 134, 41 S.E. 2d 88, the evidence indicated that the defendant had started the dispute, but at the time of the shooting he was backing away from the deceased and was trying to quit the combat and to so notify the deceased. Defendant was granted a new trial because of the court's failure to instruct the jury on this aspect. To the same effect, see *State v. Robinson*, 213 N.C. 273, 195 S.E. 824, where the Court stated:

"The charge failed to advert to and explain the law with reference to substantive rights of each of the defendants. As to both

defendants the court below declared the law as to when they could not plead the perfect self-defense. Having done so, he should have gone further and told the jury that the right of self-defense may be restored to one who has started a fight, or entered into it willingly, by quitting in good faith and giving his adversary notice of such action on his part."

We think that in the present case there was some evidence from which the jury might infer that the defendant was trying to quit the argument and that this fact was communicated to the deceased. The trial court committed prejudicial error in failing to charge on this feature of the law of self-defense. *State v. Fairley, supra;* and *State v. Robinson, supra.*

"The failure of the court to instruct the jury on substantive features of the case arising on the evidence is prejudicial error. This is true even though there is no special prayer for instructions to that effect. *S. v. Merrick,* 171 N.C. 788, 88 S.E., 501; *S. v. Bost, supra* (192 N.C. 1, 133 S.E. 176); *S. v. Thornton, supra* (211 N.C. 413, 190 S.E. 758); *School Dist. v. Alamance County,* 211 N.C., 213, 193 S.E., 31." *State v. Robinson, supra.*

In instructing the jury the trial court stated the following: ". . . if you should find from the evidence in this case beyond a reasonable doubt that the defendant shot and killed the deceased and that the defendant *himself or his family* used excessive force . . ." (Emphasis added.) It is apparent that the underscored portion of the charge was a *lapsus linguæ.* However, it must be held to be error.

"It is apparent from the exemplary manner in which the learned trial judge charged the jury in other respects and the able manner in which he presided at this trial that this erroneous portion of the charge was a *lapsus linguæ.* However, this Court has held many times that when there are conflicting instructions upon a material point, one correct and one incorrect, a new trial must be granted. Since the jury is not supposed to know which is the correct instruction, we must assume that the jury's verdict was influenced by that portion of the charge which is incorrect." *State v. Weston,* 273 N.C. 275, 159 S.E. 2d 883.

We do not discuss the defendant's other assignments of error as there must be a new trial, and they are not likely to re-occur.

New trial.

CAMPBELL and BROCK, JJ., concur.